The First National Bank in Champaign, as Executor of the Will of Mary E. Buchan, Deceased, Plaintiff, v. O. B. Pace et al., Defendants.
The First National Bank in Champaign, etc., Plaintiff-Appellee, and O. B. Pace, Defendant-Appellee, v. Lynn Penninger, Defendant-Appellant.

Gen. No. 10,391.

Third District.

May 16, 1962.

Rehearing denied June 20, 1962.

Reno & O'Byrne (Donald M. Reno, of counsel), of Champaign, for appellant.

Wheat, Hatch & Corazza (James H. Wheat and Harold A. Baker, of counsel), of Champaign, for appellee.

CARROLL, J.

This is an interpleader action brought by plaintiff, The First National Bank in Champaign, as executor of the Will of Mary E. Buchan, Deceased, seeking to have determined which of the two defendants is entitled to a real estate brokers' commission on the sale by plaintiff of certain real estate to Hershel Roth and Jane Roth. Upon answers being filed, the court heard evidence and entered a decree in favor of the defendant, O. B. Pace. Prior to the commencement of the trial, plaintiff deposited the sum of $2,676, the amount of the commission, with the clerk of the circuit court. The defendant, Lynn O. Penninger has appealed.

For the most part the facts are not in dispute and show that the defendants were licensed real estate brokers; that the real estate sold by the plaintiff was a 160 acre farm, which was part of the Buchan estate; that about August 20, 1960, Penninger made an appraisal of this tract for plaintiff; that he then learned the farm would be for sale; that in the late summer of 1960 Roth was in Penninger's office where he learned that the Buchan farm would be sold; and that later Penninger discussed the sale of the farm with Roth. On Thursday, November 3, 1960, Penninger having learned definitely from plaintiff that the farm would be offered for sale went to see Roth and told him that letters listing the farm for sale would go out from the bank in a day or two. On that occasion Roth asked what the price of the farm would be and Penninger said he did not know; that about 5 o'clock in the afternoon of Friday, November 4, Penninger again went to see Roth and told him he had been to see Mr. Kearney and Mr. Dobbins at the bank and that the listing letters were in the mail; that Penninger then told Roth the farm would be quoted at $550 per acre and recommended that Roth bid $5 more per acre because if the tenant on the farm should bid $550 per acre, the latter's offer would be given preference over Roth's bid. Penninger again saw Roth and his wife on the night of November 4 and discussed with them possession of the farm, insurance, and the matter of obtaining a loan to complete the sale, and at that time he also told Mr. and Mrs. Roth he would see them the next morning after he had gotten his letter from the bank. On Saturday morning, November 5, Mrs. Roth informed Penninger by telephone it would not be necessary for him to come out as they were not interested in buying the farm. At about 7 o'clock the same morning, Pennin-

392

ger received his letter from the bank. This letter, in pertinent part, reads as follows:

"November 4, 1960

"Dear Mr. Penninger:

"The First National Bank of Champaign, as Executor of the Will of Mary E. Buchan, Deceased, has the two parcels of land described below for sale subject to:

". . .

"The 80-acre tract is priced at $46,000.00; the 160-acre tract is priced at $88,000.00. Real estate brokers' commissions of 3% are recognized. Chicago Title and Trust Company policies are to be provided and conveyance will be by Executor's Deed. Possession and closing would be March 1, 1961. Ten per cent down is requested at the execution of the contract, and the balance on March 1, 1961, concurrently with the delivery of deed and possession.

". . .

"The Bank prefers, but is not obligated, to sell the 160-acre tract in Blue Ridge Township subject to a year-to-year crop-share lease of C. C. Roy, the tenant in possession.

"This letter is a solicitation of an offer to buy and is not an offer to sell, and this is not an exclusive listing with you. The Bank reserves the right to accept any offer which it deems most favorable without incurring liabilities for real estate commissions upon any other offers received, even though such other offers may meet or exceed the terms set forth above.

Your very truly,

s/ W. J. Kearney"

Pace and two other real estate brokers received similar letters. Penninger upon receipt of his letter then went

393

to the Roth farm and after talking with Mr. and Mrs. Roth secured a written offer of $555 per acre from Hershel Roth and a check for 10 per cent as earnest money. On the same day Penninger delivered the offer and check to the bank. Pace upon receiving his letter from the bank on November 5 went to the Roth farm and was informed by Hershel Roth that he had given a bid for the Buchan farm through Penninger. A discussion between Pace and Roth as to withdrawing the Penninger offer then followed. On Monday, November 7, Pace and Roth went to the bank, at which time the latter withdrew the Penninger offer and submitted an offer of $557.50 per acre which was accompanied by a check for 10 per cent. The bank accepted Roth's amended offer and entered into a contract of sale with him on November 11, 1960. Apparently Roth's only reason for withdrawing his first offer was that Penninger had misrepresented the matter by not telling him that the lowest figure for which the farm could be purchased was $550 per acre. On November 8, 1960, Penninger received a letter from Roth stating that he had withdrawn his offer for the Buchan Farm. Two days later Penninger learned from the bank that Roth had made another offer which the bank accepted. The only conflict in the evidence is whether Penninger showed the Roths his letter from the bank at the time they made their initial offer. The testimony of the Roths is that on the occasion when Penninger obtained their offer he failed to show them his letter from the bank and as a result they did not know that bids starting at $550 would be considered and for such reason felt they had been deceived. Penninger's testimony was that he showed the letter to the Roths and his testimony would appear to be corroborated by the fact that the offer which Hershel Roth signed was written at the bottom of the letter. However, regardless of which version is to be accepted, we think it wholly

394

immaterial whether Penninger did or did not show his letter to the Roths.

■ From the record it appears to be undisputed that Penninger first brought Roth to the plaintiff; that Roth, in accordance with plaintiff's solicitation letter made an offer of $555 per acre; that subsequently Roth accompanied by the defendant Pace, came to the plaintiff and withdrew his original offer and submitted a new one of $557.50 per acre; that Roth was the same purchaser produced by Penninger; that Roth's first offer was not rejected by plaintiff, but was replaced by an offer which increased the price; that plaintiff received no offers for the property other than those made by Roth; and that Roth, the customer produced by Penninger purchased the property from the plaintiff. From such facts we think it obvious that Penninger produced a buyer who was ready, willing and able to buy. Under the well established rule in cases involving disputes under real estate brokers' commissions, he would be regarded as the procuring cause of the sale which plaintiff made and thus entitled to the commission. Read v. Tate, 20 Ill App2d 147, 155 NE2d 337; Doss v. Kirk, 8 Ill App2d 536, 132 NE2d 49.

■ However, as indicated by the trial court's memorandum opinion, shown in the abstract, its decision was based on the conclusion that under its letter of November 4, 1960, plaintiff did not list the property with Penninger or any other broker, but only solicited them to submit offers and that acceptance of the second Roth offer, although he was the purchaser produced by Penninger obligated plaintiff to pay the commission to Pace. We cannot agree that such an interpretation may properly be placed upon the plaintiff's letter. It contains no statement to the effect that it was not to be considered a listing of the property with the several brokers to whom it was sent, nor does it contain any language warranting such an infer-

ence. It merely stated that "this is not an *exclusive* listing with you." If plaintiff was not listing the property with the brokers to whom the letters were sent there would have been no necessity to use the word exclusive. Plaintiff in sending out the letter followed the practice common in transactions between owners and real estate brokers of giving the latter a non-exclusive listing of the property. The record clearly demonstrates that both Penninger and Pace treated plaintiff's letter as an authorization to find a buyer for the property and they acted upon such letter in the expectation of receiving a commision of 3 per cent on the sale. It would be difficult to believe that Penninger or any broker would expend time and effort in procuring a purchaser who was ready, able and willing to buy at the price asked if he understood he could be deprived of his commission by the action of his customer in raising the amount of his offer through the medium of another broker. Considering plaintiff's letter and the other facts and circumstances shown by the record, we are of the opinion that when Penninger undertook to procure an offer from Roth he was acting as plaintiff's broker. His status was no different than that of any real estate broker with whom property is listed for sale. See Chicago Title and Trust Co. v. Walker, 328 Ill App 399, 66 NE2d 321 (Abst. Opinion).

Defendant, Pace, cites and relies exclusively on Lake Shore National Bank v. Kulwin, 332 Ill App 396, 75 NE2d 403. There the owner of real estate issued a circular soliciting bids for certain property which contained the statement "full commission to broker." On February 16, 1944, M. K. Irwin submitted a written offer of $50,000 specifying therein that Charles Kulwin was the only broker involved in the offer. Attached to the form of offer was a statement prepared by the owner which outlined the procedure to be followed in the event more than one offer was received. In substance, this statement provided an opportunity to the original

396

offeror to meet or better subsequent offers. The final paragraph of said statement reads as follows:

> "The Trustee shall have the right to decide in its sole discretion which offer is the best offer for its purposes and it shall be specifically understood that its preference of one offer over another may be predicated either upon the amount, or the terms, or both. *In any event the decision of the Trustee shall be final and no liability shall be asserted or enforced against it by the maker of any rejected offer or by any broker named therein.*"

Before acceptance of the Irwin offer, Adolph Rich, on March 18, 1944, submitted a bid of $55,750 which provided for a brokers' commission to be divided between Cook & Jackson, Inc., Harry Nichols and David Zisook. On March 21, 1944, Irwin increased his offer to $55,750. On March 24, 1944, the owner notified Irwin that his amended offer was accepted. On the same day the owner notified Rich that Irwin's increased offer had been accepted and that Rich's offer was rejected. On April 6, 1944, Irwin assigned his offer to Zisook, one of the brokers named in the Rich offer, and the sale was completed with title taken in his name. Nichols, Cook & Jackson, Inc., and Kulwin each claimed to be the broker who procured the purchaser. The owner filed its bill of interpleader and the trial court found in favor of Nichols and Cook & Jackson, Inc. On appeal Kulwin contended that Rich was not a purchaser in his own right from plaintiff, but acquired the property through the assignment from Irwin to Zisook and he having procured Irwin as the original purchaser was entitled to the commission. The appellate court upheld Kulwin's contention and in reversing the case said:

> "The real test in the instant case, in determining which of the brokers is entitled to the commis-

397

sion, is whether such broker, had he sued plaintiff, could recover. In any suit against the plaintiff for their claimed commission, defendants Nichols and Cook & Jackson, Inc. would have to prove under the terms of the required form of offer that they brought to plaintiff a purchaser who made an offer that was accepted."

In the instant case Penninger brought to plaintiff, Hershel Roth, a purchaser who made an offer that was eventually accepted. The fact that he amended his original offer by increasing the amount of his bid does not alter the fact that he is the purchaser who made an offer which plaintiff accepted.

Proof of these facts would entitle Penninger to prevail in a suit brought by him against the owner. When applied to the facts in this record, we think the holding in the Kulwin case supports the claim of Penninger rather than that of Pace.

It must be borne in mind that we are not here confronted with a situation where there was competitive bidding among prospective purchasers. Roth was the only person submitting an offer and he could not very well bid against himself. The initial offer which he made through Penninger was not rejected by the owner, but was withdrawn by Roth. There is nothing in the record suggesting that his first offer would not have been accepted if it had been permitted to stand. The fact that Roth may have been impelled by a spirit of generosity to needlessly add $2.50 per acre to his offer would seem to afford a rather tenuous basis for concluding that Penninger was not the efficient cause of producing the party to whom the farm was sold. Since the farm was sold to Roth, proof of his ability and willingness to purchase at the price named was not required. It is apparent that Roth, at no time after he began dealing with Penninger changed his mind about buying the farm. He did, however, decide

to change brokers. Regardless of the cause motivating his decision in that respect, it could not affect Penninger's right to a commission on the sale. Accordingly we are of the opinion that Penninger was the efficient cause of the sale and under the well settled law of this state was entitled to the disputed commission.

The judgment of the Circuit Court of Champaign County is reversed with directions to enter an order requiring the Clerk of that court to pay the commission deposited with him to the defendant, Lynn Penninger.

Reversed and remanded with directions.

ROETH, P. J. and REYNOLDS, J., concur.